Sophia G. Gold (SBN 307971)
sgold@kalielgold.com
**KALIELGOLD PLLC**
490 43rd Street, No. 122
Oakland, California 94609
Telephone: (202) 350-4783

Jeffrey D. Kaliel (SBN 238293)
jkaliel@kalielpllc.com
Amanda J. Rosenberg (SBN 278507)
arosenberg@kalielgold.com
**KALIEL GOLD PLLC**
1100 15th Street NW, 4th Floor
Washington, DC 20005
Telephone: (202) 350-4783

*Attorneys for Plaintiffs and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AMANDA POORE, on behalf of herself and all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| UNILEVER UNITED STATES, | |
| Defendant. | |

## INTRODUCTION

1. This is a proposed class action seeking monetary damages, restitution, and public injunctive and declaratory relief from Defendant Unilever United States ("Unilever") arising from its deceptive addition of junk fees to consumers' shopping carts on Olly.com ("Olly").

2. When consumers browse products on Olly's website, Olly advertises the price of its retail items, along with an advertisement for either free or flat rate shipping. Those pricing representations are false, however, because Olly surreptitiously adds junk fees to consumer purchases, including a so-called "Order Protection" fees.

3.     As discussed in detail herein, the assessment of these fees is deceptive and unfair, since: (a) Olly sneaks these fees into consumers shopping carts; (b) the fees are nothing more than an additional cost for shipping, rendering Olly's promise for "free" or flat-rate shipping false; (c) the fees themselves are deceptively named and described; and (d) the fees provide no added value to consumers and reasonable consumers, like Plaintiff, would not knowingly choose to pay them, absent Defendant's deception.

4.     Thousands of e-commerce customers like Plaintiff have been assessed hidden shipping charges for which they did not bargain due to Olly's deceptive tactics.

5.     By unfairly obscuring their true shipping costs, Defendant deceives consumers and gain an unfair upper hand on competitors that fairly disclose their true shipping charges. To wit, other major e-commerce sites do not assess such a fee.

6.     Plaintiff seeks damages and, among other remedies, public injunctive relief that fairly allows consumers to decide whether they will pay shipping costs.

**PARTIES**

7.     Plaintiff Amanda Poore is a resident and a citizen of Auburn, Washington.

8.     Defendant Unilever United States owns Olly. Olly is a retailer specializing in vitamins and supplements headquartered in San Francisco, California in the County of San Francisco.

**JURISDICTION AND VENUE**

9.     This Court has original jurisdiction over this matter pursuant to the Class Action Fairness Act, ("CAFA"), under 28 U.S.C. § 1332(d)(2) because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5,000,000, and is a class action in which there are excess of 100 class members, and some of the members of the class are citizens of states different from Defendant.

10.    This Court has personal jurisdiction over Defendant because Defendant regularly and systematically conducts business in California through the sale of vitamins in California and through its headquarters in San Francisco, California.

2
CLASS ACTION COMPLAINT

11. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. Overview of Olly

12. Olly is a vitamin and supplement brand. Olly sells its products both through its own online website and in major retail stores such as Target. This case concerns the Order Protection fee added to purchases made directly on Olly's website.

13. Olly is headquartered in San Francisco, California, and on information and belief, the decision to charge Order Protection fees to consumers originated in California.

14. At no point in the purchasing process are consumers asked to assent to Olly's Terms of Use and Service.

### II. Olly Surreptitiously Adds Fees to Consumers' Carts

15. Here's how Olly's deception works. When a consumer visits olly.com, the consumer is informed that orders over $49 are entitled to free shipping:



16. When a consumer presses the large purple "ADD TO CART" button, the shopping cart is automatically displayed on the side of the webpage. The consumer's cart is riddled with

deception. In the cart, the consumer is again free shipping for orders over $49. Olly sneaks in, in much smaller writing than the large purple button screaming "CHECKOUT+", a fee for "Checkout+". On information and belief, the added fee amounts to a percentage of the transaction. The fee is added without the consumer having done anything at all to add the fee. What's worse, the optional hyperlink to "Continue Without Checkout+" is so tiny and in such light print such as to blend with the white background, and intentionally designed to go unnoticed by consumers like Plaintiff, who did not notice the fee. Thus, if consumers even notice the very small amount added to their transactions, consumers are still left entirely unaware that the added Order Protection charge is optional, because it is presented in the cart as mandatory:



17. If a consumer selects the large purple "Checkout+" button, which the consumer is likely to do for the reasons explained above, the consumer is then taken to the checkout page where the "Order Protection" fee is presented in the cart:

(image on next page)

4
CLASS ACTION COMPLAINT



18. If a consumer scrolls down on the checkout page, the option to untoggled the fee that has already been added to the cart is small and deceptive, again in hopes that consumers will not notice the added fee:



19. Thus, reasonable consumers believe they have no other choice but to pay the add-on fee, which they were never previously informed of. This is a classic bait & switch.

20. Many consumers do not notice that an additional fee is being added to their order. Others believe that they have no choice but to pay this fee. And others still notice the previously undisclosed fee, but decide to go through with the purchase anyway: they have already invested substantial time and effort inputting their information into the Defendant's system. So, it doesn't make sense to start over and research whether there may be some other way to avoid the fee. So, there is no incentive to reverse course—there is only an incentive to pay the fee, be done with it, and avoid the burden of finding a way to avoid the fee, if the consumer can even figure out how to avoid the fee at all after navigating Defendant's deceptive screens. The deceptive checkout practice has done its job and diverted the sale to Defendant.

21. This pre-selection and automatic opting in of consumers to junk fees is itself deceptive. Imagine a scenario in which a consumer goes to the grocery store, and while being checked out by the cashier, the cashier sneaks a pack of gum on the conveyer belt without the Plaintiff having done anything at all to add the item or noticing that that the item was added. What happened to Plaintiff during the online checkout process is no different.

22. As the FTC notes, "For years, unscrupulous direct-mail and brick-and-mortar retailers have used design tricks and psychological tactics such as pre-checked boxes, hard-to-find- and read disclosures, and confusing cancellation policies, to get consumers to give up their money or data." *FTC Report Shows Rise in Sophisticated Dark Patterns Designed to Trick and Trap Consumers, September 15, 2022* (available at https://www.ftc.gov/news-events/news/press-releases/2022/09/ftc-report-shows-rise-sophisticated-dark-patterns-designed-trick-trap-consumers). The FTC further notes in its *Enforcement Policy Statement Regarding Negative Option Marketing* that **"[a] 'pre-checked box' does not constitute affirmative consent."** https://www.ftc.gov/system/files/documents/public_statements/1598063/negative_option_policy_statement-10-22-2021-tobureau.pdf at p. 13 (emphasis added).

23. This method of adding on fees is designed to go undetected by consumers and thus

provide additional revenue to Olly. The Wall Street Journal recently highlighted the problem, stating:

> Some brands automatically add optional coverage to orders. ***Customers have complained the fees are disclosed in small fonts, made to appear mandatory when they are not or are displayed late in the online checkout process***.

Imani Moise, *Porch Pirates Are Now Raising the Price You Pay at Checkout*, Wall Street Journal, December 25, 2024, available at https://www.wsj.com/personal-finance/package-theft-hidden-fee-higher-prices-325c4a34?mod=Searchresults_pos3&page=1 (emphasis added).

24. Upon information and belief, Olly is aware that by programming its website to automatically opt in consumers to "Package" or "Shipping" protection fees, most consumers will unknowingly purchase the "protection." On information and belief, Olly is further aware that had it programmed its website to offer *optional* "protection" (requiring an opt-in), the vast majority of consumers would not purchase it.

25. Because Olly's practice is deceptive, Shopify, which handles the technology infrastructure for many direct-to-consumer brands and larger companies, told merchants that automatically adding optional charges at checkout will be banned, starting in February of 2025.

26. In fact, since the initial filing of this case, Olly has ceased its practice of automatically adding its Order Protection fees to consumers' carts.

27. This ban is too little, too late to help the hundreds of thousands of consumers already deceived and exploited like Plaintiff.

### III. The Add On Fees Render Promises of Free or Flat Rate Shipping False, or At Best Ambiguous.

28. Even beyond the deceptive manner in which the fees are added, the fees themselves are additionally deceptive because they directly contradict other promises on Olly's website regarding "free" or flat-rate shipping. That is because Olly's add on fees are, in actuality, a disguised shipping charge.

29. Whatever the add-on fee is for—and as described herein, it is totally unclear—it is a fee somehow related to shipping of the products purchased by consumers. Making matters worse,

Olly describes the add-on fee as "Shipping Protection" in the cart, but then calls it "Order Protection" in the cart, creating further ambiguity regarding whether the shipping of the product or the product itself is somehow "protected", and what that "protection" actually provides to the consumer.

30.     But as described herein, Olly promised "free" shipping on certain orders and flat rate shipping on other orders. These were clear promises that the total, marginal cost of having products shipped—that is, moved from the retailer to the consumer—was represented by the "free" or flat rate shipping price promise. Olly tacks on this added fee regardless of the free or flat rate shipping promise made.

31.     However, Defendant decided it could actually charge more for shipping, thereby increasing profitability, by misrepresenting the true shipping costs to consumers.

32.     Defendant was or should have been aware that consumers were and would be deceived by an add-on shipping fee at the same time as a promise of "free" or flat-rate shipping was being made.

33.     Because it is well known that American consumers prefer free or low-cost shipping costs, Defendant made an intentional decision to break shipping costs into two parts and thus disguise their decision to charge more for shipping.

34.     The deceptively added fee is a hidden shipping fee. This renders false Olly's promise of a FREE or a flat, low-cost shipping fee.

35.     By unfairly obscuring its charges to consumers, Defendant deceives consumers and gains an unfair upper hand on competitors.

36.     In addition to the manner in which the fees are added and the fact that the added fees render other "free" or flat rate shipping promises false and deceptive, Defendant's fees are nonsense fees that provide little or no value to consumers.

///

///

///

## IV. Defendant's "Order Protection" Fee Is Inaccurately Named and Described and Provides No Added Value to Consumers.

37. Even beyond the deceptive manner in which the fees are added and the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or flat-rate shipping, the "Order Protection" fee is also deceptively named and described.

38. First, the fee provides little or no *additional* "protection" for shipments than already exists. Online retailers like Olly already provide replacements and allow for returns of products. Indeed, Olly offers 30 day returns on its website for all items. See https://help.olly.com/hc/en-us/articles/360035072232-What-is-the-return-policy. Therefore, the add-on fee provides no extra protection for goods that arrive damaged. Defendant misrepresents, and omits material facts about, that truth.

39. Moreover, popular shipping services like UPS, Federal Express, USPS Priority Mail *automatically* include shipping protection for the first $100 worth of value in a package when goods are not delivered, stolen or damaged. Defendant misrepresents, and omits material facts about, that truth, too. Thus, for the vast majority of consumers—those who are paying to ship a product less than $100—the add-on fee is entirely worthless, because they are already provided the same protection by the shippers.

40. Additionally, in the event goods are not delivered, stolen or damaged, consumers, can report the issue to their credit card company or bank, who will often reverse the charge.

41. For all these reasons, the "Order Protection" fee is deceptively named and described.

42. Even beyond the deceptive manner in which the fees are added, the fact that fees themselves directly contradict other promises on e-commerce retailer websites regarding "free" or flat-rate shipping, and the fact that the add on fees are deceptively named and described, they also provide virtually no additional value to consumers. No reasonable consumer would knowingly elect to pay for the add-on fee because it provides essentially zero additional value to consumers.

43. As described above, damaged goods may already be returned to the retailer; third party shipping services like USPS, UPS and FedEx already provide some insurance coverage; and

lost or stolen packages can be reported to credit card companies for chargebacks. Accordingly, the additional fee serves no purpose.

### V.     Defendant's Fees are Junk Fees and Violate Federal Guidance and California Law

44.     Defendant's shipping fees, such as the Order Protection fee, are precisely the type of "Junk Fee" that have come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

45.     As the Federal Trade Commission said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Federal Trade Commission, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.'

46.     In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") amending it to make "drip pricing," illegal, which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." See California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-

docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id*. at p. 4 (emphasis added).

47. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising," the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." See Fed. Trade Comm'n, .com Disclosures: How to Make Effective Disclosures iN Digital Advertising at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosure-guidelines/130312dotcomdisclosures.pdf.

48. Defendant violates federal guidance and California law by adding the shipping fees as line items well after the consumer "add[s] to shopping cart," and by failing to disclose the nature of these fees.

## VI.    **Plaintiff's Experience**

49. Plaintiff used Defendant's website, olly.com, to purchase over $49 worth of products on September 18, 2024, to be delivered to her residence in Auburn, Washington.

50. When using the website, Plaintiff was repeatedly informed that she would get free shipping as part of her purchase. Plaintiff justifiably relied on this promise when choosing to make a purchase over $49.

51. However, Plaintiff's purchase included a $1.95 charge for an "Order Protection" fee that was automatically and surreptitiously added to her cart, that—for the reasons described above—in fact represented an additional shipping charge.

52. On information and belief, Plaintiff viewed screen flow similar to the screen flow depicted above, or a screen flow containing even more deceptions concerning the Order Protection fee. The precise screen flow viewed by Plaintiff is in in the custody and control of Defendant and can be obtained during the discovery process.

53. Plaintiff did not know the charge existed or could be removed prior to her purchase.

54. Plaintiff would not have purchased "Order Protection" if she knew it was optional, and if it was not surreptitiously added to Plaintiff's cart without Plaintiff having done anything at all.

## CLASS ALLEGATIONS

55. Plaintiff brings this action on behalf of himself, and all others similarly situated persons. The proposed classes are defined as:

> All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, paid an "Order Protection" fee or other similar fee for a purchase from Olly.

56. Excluded from the Class are Defendant, any entities in which they have a controlling interest, any of their parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

57. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

58. The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. These questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the Class. Such common legal or factual questions include, but are not limited to:

      a.      Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

      b.      Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

      c.      Whether Defendant's alleged conduct constitutes violations of the laws asserted;

      d.      Whether Defendant breached its contract with consumers;

      e.      Whether Plaintiff and members of the Class were harmed by Defendant's misrepresentations;

      f.      Whether Defendant was unjustly enriched;

      g.      Whether Plaintiff and the Class have been damaged, and if so, the proper measure of damages; and

      h.      Whether an injunction is necessary to prevent Defendant from continuing to engage in the wrongful conduct described herein.

59. The parties are numerous such that joinder is impracticable. Upon information and belief, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

60. It is impracticable to bring members of the Class individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that

might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

61. Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein.

62. Plaintiff is more than adequate representative of the Class in that Plaintiff is Defendant's customer and has suffered damages as a result of Defendant's misrepresentations. In addition:

a) Plaintiff is committed to the vigorous prosecution of this action on behalf of himself and all others similarly situated and has retained competent counsel experienced in the prosecution of consumer class actions;

b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

63. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

64. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

65. All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**(On Behalf of Plaintiff and the Class)**

66. Plaintiff hereby incorporates by reference the preceding paragraphs.

67. Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et seq*.

68. The UCL prohibits, and provides civil remedies for, unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the Legislature framed the UCL's substantive provisions in broad, sweeping language.

69. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

70. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

71. A business act or practice is "fraudulent" under the UCL if it is likely to deceive members of the public.

72. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

73. Defendant committed unfair and fraudulent business acts and practices in violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly (a) sneaking fees into consumers carts; (b) deceptively naming and describing the fees; (c) the fees are in actuality simply the price involved in the shipping process; and (d) charging fees that provide no added value to consumers.

74. Defendant's acts and practices offend an established public policy of truthful advertising in the marketplace, and constitute immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

75. The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

76. Defendant's conduct also constitutes an "unlawful" act under the UCL because it

also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

77. Defendant's business practices have misled Plaintiff and the proposed Class and, unless enjoined, will continue to mislead them in the future.

78. Plaintiff relied on Defendant's misrepresentations in making his purchase.

79. Defendant deceived Plaintiff and class members into making purchases they otherwise would not make.

80. As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

81. As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

82. Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

83. Plaintiff has no adequate remedy at law in part because Defendant continue to automatically add fees to all purchases. Plaintiff therefore seeks an injunction on behalf of the general public to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

**SECOND CLAIM FOR RELIEF**
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the Class)**

84. Plaintiff hereby incorporates by reference the preceding paragraphs if fully restated

here.

85. California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

86. Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

87. Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

88. Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

89. Further, Plaintiff requests an order awarding Plaintiff and class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

90. Additionally, Plaintiff and class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

**THIRD CLAIM FOR RELIEF**
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of Plaintiff and the Class)**

91. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

92. This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.* Plaintiff and each member of the proposed Class are

"consumers" as defined by California Civil Code § 1761(d). Defendant's sale of merchandise and shipping insurance to consumers were "transactions" within the meaning of California Civil Code § 1761(e). The merchandise purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a).

93. Defendant violated and continue to violate the CLRA by engaging in the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of merchandise:

    a. "Misrepresenting the affiliation, connection, or association with, or certification by, another" (a)(3);

    b. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

    c. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

    d. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14);

    e. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

    f. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

94. Specifically, Defendant (a) deceptively added fees into consumers carts; (b) deceptively named and described the add-on fees; (c) charged Plaintiff and class members for

shipping above and beyond what was promised to them; and (d) charged fees that provide no added value to reasonable consumers.

95. Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. Defendant failed to respond to Plaintiff's letter and/or failed to agree to rectify the problems associated with the actions detailed above. Thus, Plaintiff is also pursuing claims for actual and statutory damages, as appropriate against Defendant.

96. Plaintiff also seeks public injunctive relief, as described above.

**FOURTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

97. Plaintiff repeats, realleges, and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

98. To the detriment of Plaintiff and the Class, Defendant has been, and continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

99. Plaintiff and the Class conferred a benefit on Defendant.

100. Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted said benefits, which under the circumstances, would be unjust to allow Defendant to retain.

101. Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

102. Plaintiff and the Class, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

**FIFTH CLAIM FOR RELIEF**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

103. Plaintiff repeats and realleges the above allegations as if fully set forth herein.

104. Plaintiff and Defendant has contracted for the purchase of merchandise.

105. No contract provision authorizes Defendant to be able to charge add on fees to

customers.

106. Defendant breached the terms of its contract with consumers by charging add on fees such as the Order Protection fee.

107. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the contract.

108. Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the implied covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class demands a jury trial on all claims so triable and judgment as follows:

(a) Certification for this matter to proceed as a class action on behalf of the Class;

(b) Declaring Defendant's shipping fee practices and policies to be improper;

(c) For declaratory and injunctive relief as set forth above;

(d) For an order requiring Defendant to disgorge and make restitution of all monies it acquired by means of the unlawful practices set forth above;

(e) For compensatory damages according to proof;

(f) For reasonable attorneys' fees and costs of suit;

(g) For pre-judgment interest; and

(h) Awarding such other and further relief as this Court deems just, proper and equitable.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Class Action Complaint that are so triable.

Dated: May 19, 2025                             **KALIELGOLD PLLC**

By: */s/ Sophia G. Gold*
Jeffrey D. Kaliel
Sophia G. Gold
Amanda J. Rosenberg

*Attorneys for Plaintiff and the Putative Class*